# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANES HOSPITAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | **NO.  04-cv-0395** |
| | ) | |
| **KATHLEEN SIBELIUS,** *Secretary of Health* | ) | |
| *and Human Services*, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                    **September 28, 2010**

Plaintiff Jeanes Hospital brings this action under the Medicare Act, 42 U.S.C. § 1395 <u>et</u> <u>seq.</u>, which provides for judicial review of final administrative decisions concerning disputed claims for Medicare reimbursement.  Plaintiff seeks monetary and declaratory relief under the health-costs-reimbursement program of Title XIII of the Social Security Act ("Medicare")[1] for losses allegedly sustained on the sale of its assets.  Currently before the Court are Plaintiff's second Motion for Summary Judgment and Defendant Kathleen Sibelius, Secretary of Health and Human Services's ("Agency", "Secretary", or "Defendant") second Cross-Motion for Summary Judgment.[2]

---

[1]         42 U.S.C. § 1395 <u>et seq.</u> (1965).

[2]         Document Nos. 61 and 67.  On September 29, 2006, the Court decided one aspect of this case on summary judgment in favor of Plaintiff and, while retaining jurisdiction, remanded the matter to the Administrator of the Centers for Medicare & Medicaid Services ("Administrator") for a determination of the sole remaining issue – whether the underlying merger was a bona fide sale under the Medicare rules.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In November 1995, the principals of legacy Jeanes Hospital entered into an Affiliation Agreement with Temple University Health System, Inc. ("TUHS"), which called for the merger of legacy Jeanes Hospital into a newly-formed entity, Temple Central Hospital, Inc. ("TCH", a subsidiary of TUHS), later renamed Jeanes Hospital.[3] Following the merger, Jeanes Hospital filed a "terminating cost report" with Defendant's Centers for Medicare and Medicaid Services ("CMS") for the year ending June 30, 1996, claiming entitlement to reimbursement from Medicare for a "loss-on-sale" in the merger and depreciation payments for fiscal year 1996 and earlier years totaling $16,338,246.[4] Medicare's fiscal intermediary, Mutual of Omaha Insurance Company (the "Intermediary"), applying relevant statutory regulations, issued a Notice of Amount of Medicare Program Reimbursement ("NPR") denying Jeanes Hospital's claimed loss.[5] This case arises out of Jeanes Hospital's claim for the additional Medicare payments allegedly resulting from the depreciation of its assets as a result of the merger.

Jeanes Hospital appealed the NPR to Defendant's Provider Reimbursement Review Board ("PRRB"). The PRRB held an evidentiary hearing on July 1, 2002, and ultimately

---

[3] On July 1, 1996, the parties completed the merger and the newly-created TCH was immediately renamed "Jeanes Hospital." See Administrative Record [herein designated as "A.R."] 927.

[4] See A.R. 838. A provider of health care to beneficiaries of the Medicare program may be reimbursed by Medicare for its reasonable costs – i.e, "the cost actually incurred," subject to certain limitations – of furnishing covered services to those beneficiaries. See 42 U.S.C. § 1395x(v)(1)(A)(2000).

[5] See A.R. 713-14. The Intermediary concluded that the Jeanes Hospital merger was a transaction among related parties, primarily because Jeanes Hospital had continued participation in the management of the surviving entity. See A.R. 841-46. The Intermediary further concluded, without performing any financial analysis of the merger transaction, that "[s]ince there is a related party status between the parties at the execution of the merger agreement, this is not a bona fide sale of assets...." Id.

rejected the Intermediary's decision and upheld Jeanes Hospital's claim.[6]  The Administrator

then reviewed the PRRB's decision under 42 C.F.R. § 405.1875(a) and on November 25, 2003,

reversed the PRRB's opinion.[7]  Jeanes Hospital subsequently appealed to this Court on January

28, 2004 pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-59, and both

parties timely filed motions for summary judgment.

On September 29, 2006, the Court issued a Memorandum Opinion and Order, granting

Plaintiff's Motion for Summary Judgment in part and denying Defendant's cross-motion for

summary judgment.  A more complete recitation of the factual history of this case was

established in the Court's September 29th Memorandum Opinion, which is hereby fully

incorporated herein.  In its Memorandum Opinion, the Court found, in part, that:

> Both the Intermediary and Administrator concluded that "since the parties
> to this transaction are related...the transaction was not consummated through an
> arm's length transaction"...based on the reasoning that a bona fide sale cannot
> occur in a related-party transaction.  No further analysis of the merger is required
> after finding the merger to be a related-party transaction, and thus, neither the
> Intermediary nor the Administrator performed the appropriate financial analysis
> on the Jeanes Hospital merger.  In view of this Court's holding that the Jeanes
> Hospital merger was an unrelated-party transaction, however, the Administrator's
> review and analysis is incomplete.  Instead, the transaction must be analyzed to
> determine whether it involved an "arm's length transaction . . . for reasonable
> consideration...."[8]

Accordingly, the Court retained jurisdiction over this matter and remanded the case to the

Administrator for further proceedings and fact finding on the limited issue of whether the Jeanes

---

[6]     See A.R. 61, 71-72; Jeanes Hosp. v. Mutual of Omaha Ins. Co., PRRB Case No. 99-0584; see also, PRRB Dec. No. 2003-D-62.

[7]     A.R. 2-31; 37.

[8]     Document No. 45, at 25-26.

Hospital merger qualified as a bona fide sale.[9]

On February 28, 2007, in response to the Court's remand, the Administrator remanded the issue to the PRRB "to determine whether the Jeanes Hospital merger was a bona fide sale." The PRRB held a hearing on this issue on October 30, 2007. On May 27, 2009, the PRRB issued a decision that upheld Jeanes Hospital's claim. On July 28, 2009, however, the Administrator overturned the PRRB's decision, finding that the transaction was in fact not a bona fide sale, and disallowed Jeanes Hospital's claim for payment from Medicare.[10] Specifically, the Administrator found that: (1) although the legacy Jeanes Hospital Board negotiated with TUHS, those negotiations did not concern the price of the assets, but related to the commitments TUHS would make on behalf of the newly formed Jeanes Hospital; (2) the Board's motivation was not to obtain the best purchase price for the hospital's assets, but instead to define the mission of the new Jeanes Hospital and ensure their continued participation in the management of the hospital; (3) the Board's efforts to obtain benefits for the new Jeanes Hospital, and not for themselves, demonstrated that they were not pursuing their own economic self-interest; and (4) Jeanes Hospital transferred assets with substantially greater value than the amount of their supposed consideration. The Administrator determined that these findings conclusively demonstrated that the Jeanes Hospital Board was not motivated to obtain the best possible sales price in the exchange.[11]

---

[9]       Document No. 45 at 28; Document No. 47.

[10]      See A.R. 2A, 4A, 19A-27A. Prior to the issuance of the Administrator's Remand Decision, the Intermediary submitted comments requesting that the Administrator reverse the PRRB's decision on the basis that (a) there was no appraisal of Jeanes Hospital's facility prior to the merger; and (b) since the post-merger appraisal was not based on the cost approach method, it did not measure the fair market value of each of Jeanes Hospital's assets as required by 42 C.F.R. § 413.134(f)(2)(iv)(2000).

[11]      See A.R. 19A, 20A, 22A, 24A-27A.

Plaintiff thereafter filed its second Motion for Summary Judgment and Defendant filed its second Cross-Motion and Opposition to Plaintiff's Motion. The limited matter before the Court is whether the Administrator properly determined that the TUHS-Jeanes Hospital Merger did not result in a bona fide sale because the parties did not engage in arm's length negotiations and did not exchange reasonable consideration during the merger. The Court's initial analysis and discussion commemorated in its September 29, 2006 Memorandum Opinion and Order on the issues of whether TUHS and Jeanes Hospital were "unrelated parties" - part one of the bona fide sale analysis - remains unchanged and the parties do not contest the Courts previous findings and conclusions to this effect in their instant Motions. This Memorandum Opinion and Order should be read in conjunction with the Court's aforementioned September 29, 2006 Memorandum Opinion and Order for a full and complete analysis of the underlying issue of whether the TUHS-Jeanes Hospital merger resulted in a bona fide sale.

## II.  LEGAL STANDARD

Pursuant to the Medicare Act, a healthcare provider must file an annual cost report with its fiscal Intermediary in order to obtain reimbursement for services rendered to Medicare program beneficiaries.[12] The Intermediary then determines the amount of the reimbursement and issues a NPR, which informs the provider of the amount of reimbursement granted for the reported fiscal year.[13] If the healthcare provider disagrees with the Intermediary's determination, it may file an administrative appeal with the PRRB.[14] The decision of the PRRB becomes the

---

[12]  42 C.F.R. § 413.20(b)(1996), § 413.24(f)(2005).

[13]  Id. § 405.1803 (2009).

[14]  42 U.S.C. § 1395oo(f)(1)(1993); 42 C.F.R. § 405.1835 (2008).

Agency's Final Decision sixty days after it is issued, unless the Agency, through its Administrator, elects to review the PRRB decision within that time period, in which case the Administrator's decision becomes the Agency's Final Decision.[15] The healthcare provider may seek judicial review of the Agency's Final Decision in a federal district court.[16]

Judicial review of the Agency's Final Decision is governed by 42 U.S.C. § 1395oo(f)(1), which incorporates the standard of review of the APA.[17] Under the APA, a court may only set aside agency final actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "unsupported by substantial evidence."[18] A reviewing court "must give substantial deference to an agency's interpretation of its own regulations."[19] The reviewing court must also "defer to the agency's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation."[20] "This broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly regulatory program [such as Medicare],' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy

---

[15]   Id.

[16]   Id.

[17]   See 5 U.S.C. § 706 (1966).

[18]   5 U.S.C. § 706(2)(A),(E); see also, Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

[19]   5 U.S.C. § 706(2)(A); see also, Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); UPMC-Braddock Hosp. v. Sebelius, 592 F.3d 427, 436-7 (3d Cir. 2010).

[20]   See Id.

concerns.'"[21] If an agency's findings of fact are supported by substantial evidence, a reviewing court lacks power to reverse either those findings or the agency's reasonable regulatory interpretations used in finding such facts.[22] Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23] The Administrator's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it."[24]

## III. DISCUSSION

Plaintiff requests that the Court reverse the Administrator's Remand Final Decision and find that the TUHS-Jeanes Hospital merger was a bona fide sale. Conversely, Defendant requests that the Court affirm the Administrator's Remand Final Decision and enter summary judgment in favor of the Agency. The Court will review the Administrator's Decision in accordance with the statutory framework set forth below and determine whether there is substantial evidence in the record as a whole to support the Administrator's conclusion that the Jeanes Hospital merger was not a bona fide sale.

### A. Statutory and Regulatory Requirements

Under the Medicare Act, Medicare service providers such as Jeanes Hospital are entitled to claim the depreciation of property and equipment used to provide health care to Medicare

---

[21] Id. (citing Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991)); see also Monongahela Valley Hosp. v. Sullivan, 945 F.2d 576, 593 (3d Cir. 1991).

[22] Monsour Med., 806 F.2d at 1191; see also 5 U.S.C. § 706(2)(E).

[23] Mercy Home Health v. Leavitt, 436 F.3d 370, 380 (3d Cir. 2006) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Monsour Med., 806 F.2d at 1190 (quoting Universal Camara Corp. v. NLRB, 340 U.S. 474, 477 (1951)).

[24] Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001).

patients as a reimbursable cost.[25]  Under the Medicare reimbursement system that was in effect at the time of the TUHS-Jeanes Hospital merger, a "statutory merger" may result in a depreciation adjustment, but only if the merger was between "unrelated parties" and constituted a "bona fide sale."[26]

In determining whether a provider should be reimbursed for depreciation expenses under Medicare, the CMS applies a two-pronged test.  The first question is whether the parties are "related parties" or "unrelated parties" under the Medicare regulations.  If the parties are related, they cannot engage in a bona fide sale and the analysis ends.  If the parties are unrelated, the second question is whether the parties engaged in a bona fide sale (*i.e.*, an at arm's length transaction in which reasonable consideration is exchanged for the asset).  If the parties engaged in a bona fide sale, then a reimbursement for adjusted depreciation costs is proper.  If the sale of an asset is not "bona fide" no gain or loss is permitted.[27]

In addition to promulgating regulations, the Agency periodically issues manuals to assist healthcare providers and fiscal intermediaries in administering the reimbursement system and interpreting the regulations.  In Albert Einstein Med. Ctr. v. Sebelius[28] the Third Circuit determined that two of these Agency manuals are particularly pertinent to determining the

---

[25]     42 U.S.C. § 1395f(b)(1)(2009).  Medicare ultimately phased out the cost reimbursement method of paying hospitals for capital-related costs, though it is undisputed that the cost reimbursement method was in effect at all times relevant to this action.  Additionally, in 1997, Congress amended § 1861 of the Social Security Act, 42 U.S.C. § 1395x(v)(1)(O)(I), setting the asset's value equal to the owner's historical cost less depreciation allowed, thereby eliminating the possibility of gains or losses resulting from asset disposal after August 5, 1997.  This amendment, however, has no effect on the merger at issue here because the merger occurred on July 1, 1996, prior to the amendment.

[26]     See UPMC-Braddock Hosp., 592 F.3d at 428.

[27]     See 42 C.F.R. § 413.134(f)(2).

[28]     566 F.3d 368 (3d Cir. 2009).

standards relevant to whether a "bona fide sale" occurred: (1) the Provider Reimbursement Manual ("PRM") and (2) the Program Memorandum A-00-76 ("PM") issued on October 19, 2000, which addressed the application of 42 C.F.R. § 413.134(k).[29] The Third Circuit recognizes PM A-00-76 as a reasonable interpretation of the Medicare regulations, and has held that deference shall be accorded to that interpretation.[30] The Third Circuit has also adopted the Agency's definition of a "bona fide sale" for Medicare reimbursement purposes, and has unequivocally held that a merger must satisfy both requirements – at arm's length negotiations and reasonable consideration – in order to qualify as a bona fide sale.[31]

Section 104.24 of the PRM defines the term "bona fide sale" as:

> [A]n arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration. An at arm's length transaction is a transaction negotiated by unrelated parties, each acting in its own self interest.[32]

PM A-00-76 further explains that in evaluating whether a bona fide sale has occurred in the context of a merger or consolidation between or among non-profit entities, a comparison of the sales price with the fair market value of the assets (established using the "cost approach") is a required aspect of such analysis.[33] A large disparity between the sale price and the fair market

---

[29]    Id. at 377-78; see also UPMC-Braddock Hosp. v. Sebelius, 592 F.3d at 432.

[30]    Einstein, 566 F.3d at 376-77.

[31]    UPMC-Braddock Hosp., 592 F.3d at 431 ("crucially both of these requirements must be satisfied for there to be a depreciation adjustment entitling a provider to reimbursement for depreciation-related losses")(citing, Einstein, 566 F.3d at 377-78).

[32]    PRM, Ch. 1, § 104.24 (May 1, 2000).

[33]    Program Memorandum Intermediaries, HCFA-Pub. 60A, Transmittal A-00-76 ("PM A-00-76") (Oct. 19, 2000); see also Germantown Hosp. & Med. Ctr. v. Mutual of Omaha Ins. Co., P.R.R.B. Dec. No. 2004-D-36, 2004 WL 3049341, at *17 (P.R.R.B. Oct. 28, 2004).

value of the assets sold indicates the lack of a bona fide sale.[34] PM A-00-76 also emphasizes that both non-profit and for-profit mergers are subject to the regulatory requirements of a "bona fide sale" to qualify for Medicare reimbursement of depreciation-related losses.[35]

## B.     Bona Fide Sale

### i.     At Arm's Length Transaction

Plaintiff argues that the TUHS-Jeanes Hospital merger was an "at arm's length transaction" because both entities negotiated in a process that was "formal and rigorous, taking many days and evenings."[36] Robert H. Lux, the chief financial officer of TUHS, testified at the administrative hearing that TUHS took the position during the negotiations that it should not have to absorb Jeanes Hospital's liabilities in light of the value of the assets and that Jeanes Hospital "argued vehemently to the contrary."[37] The record reflects that there were discussions between the parties "about [which] liabilities would be assumed, [and] what would be a price that would be paid for those liabilities...."[38] The Administrator's Decision, however, concluded that the negotiations over the liabilities to be assumed related to whether the liabilities would be assumed by the Temple parent or subsidiary, rather than the amount to be assumed.[39] The Administrator further concluded that the negotiations over the payment did not demonstrate an at

---

[34]     See Lehigh Valley Hosp.-Muhlenberg v. Leavitt, 2006 WL 2547061 at *6 (E.D. Pa. August 31, 2006) (citing Germantown Hosp. & Med. Ctr., 2004 WL 3049341, at *17).

[35]     See AR 794A, 796A.); see also, e.g., Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 375-76 (3d Cir. 2009).

[36]     Pl.'s Br. In Supp. Of Mot. For Summ. J. [Doc. No. 61-1] at 19; see also, A.R. 718A.

[37]     A.R. 132A.

[38]     Id.

[39]     A.R. 217A, 233A, 627A.

arm's length transaction because the payment was "for the economic benefit of an entity that was intended to be related to the new Jeanes [Hospital]...." The Court finds, however, that this conclusion, as a basis for determining that the merger was not a bona fide sale, is misplaced. The Court has previously ruled that TUHS and the Jeanes Hospital sellers were unrelated parties.[40] The Administrator's determination that legacy Jeanes Hospital was negotiating a payment amount that it planned to use on behalf of the post-merger hospital does not detract from the nature of the negotiation as at arm's length. It is established by the record that legacy Jeanes Hospital had a strong economic incentive to fully and "selfishly" negotiate with TUHS, so that post-merger, the Anna T. Jeanes Foundation could apply the profits from the sale, to whatever extent it found appropriate, for the benefit of the newly formed Jeanes Hospital. Moreover, the fact that the seller of Jeanes Hospital had objectives related to how the post-merger hospital would operate does not negate the at arm's length nature of the negotiation.

The Third Circuit's decision in UPMC-Braddock bolsters this Court's earlier ruling. In that case, the appellate court stated that "examination of whether parties were related pre - *and* - post-merger - is contrary to the plain language of the regulations, and we conclude that under the proper, pre-merger test, the parties were not related at the time of the transaction."[41] The Third Circuit noted that record evidence of the efforts made by the merging entity to solicit and pursue merger partners is suggestive of the fact "that the transaction was negotiated at arm's length."[42] In addition, it is uncontroverted that Jeanes Hospital pursued affiliation discussions with four

---

[40]    See Document No. 45.

[41]    UPMC-Braddock Hosp., 592 F.3d at 428.

[42]    Id. at 434, n. 10.

other health care systems and that one such negotiation even culminated in a memorandum of understanding to merge.[43]  The failure of those negotiations, which included included a three-month due diligence review, ultimately resulted in Jeanes Hospital's decision to pursue the underlying Affiliation Agreement with TUHS.[44]  The Administrator's conclusion that the merger transaction was not negotiated at arm's length is contradicted by substantial evidence established in the administrative record.  The Court finds no reason to conclude that the Agency's policy statements preclude a finding of at arm's length negotiations simply because a party may have multiple objectives in the sale of an asset, including non-price driven objectives.

ii.      *Reasonable Consideration*

Having concluded that the parties were dealing at arm's length, the remaining dispositive question is whether the merger included an exchange of reasonable consideration for the sale of Jeanes Hospital's assets.  In assessing whether reasonable consideration was exchanged, a determination must be made as to whether the value of the assets exchanged was close enough to qualify as reasonable consideration.  "Relevant questions include: Is there a disparity? How large is it?"[45]  Here, when acquiring the assets of Jeanes Hospital through a statutory merger, TCH assumed Jeanes Hospital's liabilities, and TUHS agreed to make a payment of $1 million to the Anna T. Jeanes Foundation, which (under a different name) controlled Jeanes Hospital prior to

---

[43]      A.R. at 439-44.

[44]      Id. at 446.

[45]      UPMC-Braddock Hosp., 592 F.3d at 432.

the merger.[46] Jeanes Hospital allocated the lump-sum sales price among all its assets sold.[47] Significantly, the record reflects that Jeanes Hospital surrendered $103.4 million in assets for TUHS's assumption of $68,214,000 in liabilities and a one million dollar donation to the Anna T. Jeanes Foundation.[48]  In total, the purchase price was valued at $69,214,000.[49]

Unlike in UPMC-Braddock Hosp., where the Administrator concluded that "given the difference between $26.7 million [in assets sold] and $12.9 million [in liabilities assumed], reasonable consideration was not exchanged," based on the revelation that there had been a "$10 million calculation error for the value of the land, land improvements, buildings, and equipment" that was transferred from the seller, the record in the instant case clearly reflects that Jeanes Hospital transferred assets with a reported value in its financial statements of over $112 million in exchange for the assumption of debt, plus other considerations, that amounted to approximately $69 million.[50]  The Court therefore finds it significant Jeanes Hospital transferred its assets for approximately sixty-two (62) percent of its reported value.[51]

---

[46]     A.R. 719A.

[47]     A.R. 1040.

[48]     A.R. 5A, 219A, 799A, 803A-804A.

[49]     Id.

[50]     In UPMC-Braddock Hosp., the district court granted summary judgment in favor of the Agency based on its conclusion that there was substantial evidence to support the Administrator's finding that reasonable consideration was not exchanged between the merging parties.  On appeal, however, it was revealed that the "figure of $13,325,000 as value for the land, land improvements, buildings and equipment" of the seller's "$26.7 million" assets was miscalculated and that the correct figure was closer to $3 million.  UPMC-Braddock explained this mistake in its opening brief and the Agency conceded the error in its supplemental brief.  Once this $10 million error was taken into account, the Third Circuit concluded that sold assets were "no longer double what was received, but exceeded what was received by only $3.5 million," and held that the case should be remanded to the district court for further consideration on the bona fide sale issue.  UPMC-Braddock Hosp., 592 F.3d at 432-433.  In this regard, the instant case is markedly distinguishable from UPMC-Braddock Hosp. on the facts.

[51]     A.R. 5A, 799A.

Further evidence of a lack of reasonable consideration is based on the lack of any attempt to obtain an appraisal of Jeanes Hospital's assets before the merger, the sale moving forward solely on TUHS's examination of and ability to carry legacy Jeanes Hospital's debt load.[52] Consequently, the Court agrees with the Administrator's conclusion that on its face, the "merger transaction does not reflect the characteristics of a bona fide sale."[53]

Plaintiff attempts to narrow the significant "sales price" to "assumed debt" disparity by relying on an appraisal obtained post-merger. Plaintiff argues that "there was only a small difference between the sales price and the fair market value of the transferred assets in the TUHS-Jeanes Hospital merger" and therefore the "reasonable consideration" requirement in the Agency's definition of a bona fide sale was satisfied.[54] This assertion, however, is not supported by the record evidence. Neither TUHS nor Jeanes Hospital obtained an appraisal of the value of Jeanes Hospital prior to the merger.[55]

Months after the merger, in a report dated September 18, 1996, Valuation Counselors attempted to appraise the value of Jeanes Hospital and concluded that at the time of the merger, Jeanes Hospital's real estate and depreciable assets were worth $30,100,000, using the "income-approach" method.[56] The PRRB accepted this accounting methodology; found that the fair

---

[52]     A.R. 136, 24A.

[53]     A.R. 24.

[54]     Pl. Br. In Supp. Of Mot. For Summ. J. at 5-6.

[55]     A.R. 132A - 133A.

[56]     A.R. 215A; Pl.'s Reply in Opp. at 8.  There are three methodologies by which appraisers determine the fair market value of a business – the "cost approach," the "income approach," and the "sales comparison / market" approach. The Valuation Counselors' appraisal principally relied on the income approach and did not take into consideration Jeanes Hospital's current assets, other monetary assets, and cash equivalents.

market value of Jeanes Hospital's assets was $71,969,000; and reasoned that the $69,214,000

"purchase price" (i.e., $68,214,000 in liabilities assumed plus $1,000,000 paid to the Anna T.

Jeanes Foundation) resulted in a reasonably exchanged consideration.[57]  The Administrator,

however, rejected the PRRB's acceptance of the income approach method, on grounds that it is a

"valuation of the business enterprise as a whole," and instead, found that the "replacement cost /

cost approach is the most appropriate methodology to use in establishing the fair market value of

assets" in a bona fide sales analysis because it allows a determination of the individual value of

the various assets involved.[58]

Plaintiff further contends that "there is ample evidence in the hearing record that the

income approach is a suitable...method for determining the fair market value of hospitals...."[59]

This assertion, however, is contrary to this Court's previous determination that:

> PM A-00-76 explains that in evaluating whether a bona fide sale has
> occurred in the context of a merger or consolidation between or among non-
> profit entities, a comparison of the sales price with the fair market value of the

---

[57]     A.R. 3A, 680A.  The PRRB also determined that Jeanes Hospital's cash and other assets as of
June 30, 1996, totaled $41,869,000.  The Administrator, however, rejected this determination, finding that Jeanes
Hospital's "financial statements show other current assets valued at approximately $54,595,000," and used the larger
figure to calculate the hospital's value.  The Administrator also included in its calculations funds that were reported
on the Jeanes Hospital balance sheets as "Anna T. Jeanes perpetual trust, held by third party."  This change added
$13,211,000 to the Administrator's determination of Jeanes Hospital's pre-merger assets.

[58]     A.R. 26A.  Additionally, it is noteworthy that Jeanes Hospital's own witness confirmed the
inadequacies of using the income approach and acknowledged that the income approach does not measure the fair
market value of each depreciable asset as required by the regulation.  When questioned whether the income method
valued the assets in its depreciated state, the witness responded, "No."

[59]     Pl's Br. In Supp. Of Mot. For Summ. J. at 16.  In its Opposition Motion, Plaintiff does not dispute
that Program Memorandum A-00-76 states that the cost approach method is the only appropriate method for
determining fair market value.  Rather, Plaintiff disputes whether the Agency's Memorandum is binding on the
Agency.  The Court finds that this dispute has no bearing on its determination of whether, taken as a whole, the
Administrator's Decision was based on substantial evidence found within the record. It is settled law that the Court
should defer to the Agency's reasonable interpretation of its own  regulations "unless an alternative reading is
compelled by the regulations's plain language or by other indications of the Secretary's intent at the time of the
regulation's promulgation."  Thomas Jefferson Univ., 512 U.S. at 512; see also Einstein, 566 F.3d at 373.

-15-

assets (established using the 'cost approach') is a required aspect of such analysis.[60]

Even if *arguendo* the Court were to accept Jeanes Hospital's argument that an income approach appraisal was appropriate to value its land and depreciable assets, the exchange would still amount to approximately eighty-one (81) cents on the dollar.[61]  The Court concurs with the Administrator's determination that one would not expect a party earnestly negotiating in its own self interest to agree to such an exchange.[62]

When compared to the $68,214,000 in liabilities assumed plus the one million dollars paid to the Foundation, which totals $69,214,000, the Court finds that the Administrator properly concluded that Jeanes Hospital did not receive reasonable consideration for the $112 million assets transferred.  Based on the findings established in the record, the large disparity between the sale price and the value of the assets sold strongly supports the conclusion that reasonable consideration was not exchanged, and as a result, the merger transaction was not a bona fide sale.  It was neither arbitrary nor capricious for the Administrator to find that Jeanes Hospital was not a "well-informed seller" in an exchange of assets for reasonable consideration when it is undisputed that, among other things, the parties had no pre-merger valuation whatsoever of the Jeanes Hospital assets.[63]

---

[60]     Document No. 45.

[61]     A.R. 25A, 27A, 140A.  The Administrator concluded that if one accepts the post-merger appraisal that uses the cost approach method, the appraised fair market value of the depreciable assets and land was $48,808,000, while the financial statements show other current assets valued at approximately $54,595,000, resulting in a total fair market value of Jeanes Hospital's assets at $103,403,000.

[62]     See Einstein, 566 F.3d at 379 (finding disparity of $32 million in purchase price to be evidence of the lack of a bona fide sale).

[63]     See Einstein, 566 F.3d at 377.

## IV. CONCLUSION

Accordingly, the Court finds that the Administrator correctly concluded that under 42 C.F.R § 413.143(f) and (k)(2)(I), Jeanes Hospital did not realize an actual loss arising from the TUHS-Jeanes Hospital merger.[64] The Court further finds that the Administrator's determination that the Jeanes Hospital merger was not a bona fide transaction is supported by substantial evidence in the record and is hereby affirmed. Taking the record as a whole, Plaintiff has not met its burden of proof to show that "the evidence not only supports a contrary conclusion, but compels it."[65] Accordingly, Defendant's Cross-Motion for Summary Judgment shall be granted and Plaintiff's Motion for Summary Judgment shall be denied.

An appropriate order follows.

---

[64] A.R. 28A, 133A. The record reflects that, as a result of the merger, the transaction was treated as a "pooling of interest" which resulted in no reevaluation of assets or recording of gains or losses. Notably, Jeanes Hospital's own witness acknowledged during the hearing that it was a "loss on paper" only.

[65] See Abdille, 242 F.3d at 484.